Good morning, Your Honor. Sean Morgan from Barnes and Noble. If the panel would permit, I'd like to reserve three minutes. And I promise no analyses about square footage or iPads. Given the posture of this case, there was simultaneous briefing, and so there was no opportunity for replies. So I'd like to address a few issues that came up in the appellee's brief that we didn't have an opportunity to discuss. Before you do that, could I just ask, is there anything in the record to show that as a regional director for Barnes and Noble, Mr. Adams supervised all the stores? He did. Or just some of them. Is there anything in the record that tells us? Paragraph 2, his declaration. Counsel. Sure. This is a caution. We all tend to talk fast, including us up here. And I wait. But you've got to wait until the question is finished, or you'll wind up answering the wrong question. I understand. Okay. He does. Mr. Adams does oversee every store in California. His declaration in paragraph 2 states that he has direct responsibility for California stores. It doesn't say all or it doesn't say some. We acknowledge that. But it does say all California stores. Well, you acknowledge he doesn't say all. He doesn't say all. But he says responsibility for California stores. And the one fact that is probably relevant to this is since these earlier proceedings on the removal, the plaintiffs have deposed Mr. Adams. They've had him testify under oath that he oversees all of the California stores. But did the district court have any reason to know that he managed all those stores? He testified under penalty of perjury that he oversees California stores. We, again, admittedly, we didn't include the word all, but nor was there any other qualifier to suggest that there was a more limited number. Did the district court have the benefit of the deposition you just mentioned? Not at the time the district court ruled. And so one thing, the appellees on, I believe, page, well, not the page, sorry, page 21, I believe, of their brief, made a suggestion that maybe, in fact, he didn't oversee all these stores. And I actually would have expected to see perhaps a corrective submission from the plaintiffs acknowledging that he has testified unequivocally that he is the single best person within Barnes & Noble to testify about California stores. Well, counsel, look, you've tried cases a lot. I've tried cases a lot. We know that an objection, before you put an expert on or a qualified witness, you have to lay foundation and to say, well, we left all out. That's not all you left out. You didn't say anything about his responsibilities. There's no, you know, the fact that the guy, let's assume he supervises all stores. Where's the foundation for what he does as supervisor? What's the foundation for how many there are that he actually supervises? Does he look into what kind of records does he look at? Those are all the things that the district court was troubled by. And said, you know, there's no foundation here. And that's an evidentiary ruling. So what are we supposed to do up here from our perspective? Say, well, sorry, Judge King, you know, you just were too strict in asking them for foundation. If you're going to put in an affidavit and a declaration where you have all the time in the world to lay foundation, this one was exceedingly spare and conclusory. So I don't know what we're supposed to do when you say, well, you know, they've deposed him since. But, you know, the facts that they may have gotten out came from facts that you were supposed to put forward. So I'm somewhat unmoved by your argument. We're not relying on the fact that the deposition took place afterwards. I wanted to point that out to the court because plaintiffs, and one of the issues here is that, and I want to directly address your question, but there's been no dispute from the plaintiffs about the information that was provided in the declaration. There's some disputes about how that can be calculated out to show exposure, although those disputes don't even come close to changing the $5 million threshold. But Mr. Lena, the plaintiff, is a current Bonds & Noble employee. He has been for the entire class period. He knows exactly how many stores there are in California. He knows what his salary is. He knows what his schedule is. He likely has very good information about what the schedule is of his peers as well as their salaries. There has been no factual dispute about the evidence that Mr. Adams put forward in his declaration. And both this Court and Lewis and the Seventh Circuit and Spivey by Judge Easterbrook, who this Court has cited with approval, pointed it out, that we're not having a factual dispute about the information that was in these declarations, that it's holding them to too high of a standard to not put forth additional information. Now, to go back to Your Honor's question about the foundation, this is a person who has sole responsibility, the only person within the whole company who has responsibility for all California stores. Anybody below him has responsibility for only a section of California. Anybody above him is farther removed. He testified about the most simple facts, the number of stores. Anybody can Google that. This isn't something that's contrary. The average salary is $50. Yes, I gave you that he supervises stores, but that's not all the district court relied on. It was the absence of any of this information about what he looked at, how he knew. You're telling us that, well, Mr. Lehman knows it, or Mr. Lehman knows it. It's the district court that has to know it. I'm not somehow saying, well, this is unfair. They didn't kind of basically roll over on the declaration for the court and say, you know, well, we'll fill in the details because we know it just as well as they do. I understand. It's not Googley. I think the district court is going to start accepting Google evidence as dispositive. There are standards, and even the federal rule explains that you need to lay a foundation. Understood, Your Honor. I'm not trying to beat up on you. I'm just trying to understand what you expect us to do. What's our standard of review? And what is it you want us to do under that standard of review to tell Judge King that he made a mistake in not accepting this declaration as sufficient? First, I believe under these circumstances the appropriate standard of review is de novo because I believe there was a legal error below, which was that he didn't assess this under the standard in self-realization, fellowship, and the K-Probes cases from the Ninth Circuit that you can infer foundation from job title. So there was no discussion in the district court's order about that's the applicable standard, and therefore I'm going to assess this declaration under that standard. So we have no reason to believe that he used the proper legal standard. Now, even under abuse of discretion, I believe it's an abuse of discretion to determine that somebody in this position, who is the regional director of all of California, wouldn't know these very basic facts. You're assuming. Now I won't give you the assumption. You keep putting in all. That is not what it said. It said a regional director. So how does the court know that this isn't the regional director who has the region for Southern California? The Ninth Circuit has nine states say, you know, I'm in the Ninth Circuit. I don't know what's going on outside of my courthouse, and I know little about that. Okay? I'm not a manager, but we have a deputy clerk here. Say she's, you know, a deputy clerk in the Ninth Circuit, but she wouldn't be accurate to say she's a deputy clerk for all of the Ninth Circuit. The district courts themselves, we've got four regions, if you will, four districts in California. I'm not a manager. I don't know what's going on outside of my courthouse. Okay. Can you understand why Judge King found it ambiguous and not sufficient? I do understand that. And had we had a hearing on the motion, which the judge did not hold, we could have made an offer of proof to supply the word all, which apparently would have fixed almost all these issues. And I do think there is an issue of fairness here where, you know, courts give plaintiffs two, three, four times to amend to make sure that they can be given every shot to get heard in Federal court. And here, you know, the defendants on an easily remedial issue, remedial issue, weren't given any chance at all or even to discuss it with the court. And the court is not going to do that. Is there another opportunity now that you say you have the facts, is there another opportunity for you to refile and file a new motion? I believe that this court vacated and remanded with instructions to allow us to file an additional supplemental declaration. That might be. I'm talking about under CAFRA. Would you have another shot at, because there is discussion in the case law about, if you have, it's really 30 days from the time that you have reason to believe that there's a Federal jurisdiction here. So then the question is, you know, in essence, it's facts that you already knew, you just didn't get the chance to put out on the table. You can't avail yourself of the procedures under CAFRA to? Well, I know we get strong argument from the plaintiff's side that we've always been aware of these facts and our opportunity to put them in was earlier. Your Honor correctly cites a standard that it is 30 days from when you understand that jurisdiction is appropriate. Now, arguably, because plaintiffs have been arguing that jurisdiction is not appropriate, that we could take discovery, for instance, of the named plaintiff or other class members, find out what they're claiming in terms of ours, and then say, you know, now our clock restarts. But it's not clear, Your Honor, that we would be allowed to do it under the provision you cited. Okay. Thank you. Well, let me just, on that same line, under 28 U.S.C. 1446b3, I read it to say that if this case is remanded to the State court and further motions or discovery that would trigger removal, you would still have an opportunity to remove the case. Is that not correct? Yes, Your Honor. New facts. And so, again, I think the plaintiffs would argue that the facts that we're talking about, about Mr. Adams overseeing all stores, are not new facts. But some of the other quibbles that plaintiffs have raised about, for instance, the number of hours alleged, those would arguably be new facts that would trigger that provision. All right. Thank you. Okay. A couple of... Unless we have... You don't have to use up all your time if you want to wait and save some for Roboto. You said you wanted to save a couple minutes. I do, Your Honor. So I'll do that. Thanks. Good morning. May it please the Court. My name is Maria Nickerson, and I'm appearing on behalf of Eric Lina. So the district court below correctly decided that the declaration of Marvin Adams lacks foundation and personal knowledge such that it is not admissible summary judgment type evidence that would prove, with the preponderance of the evidence, that the amount in controversy in this case exceeds $5 million. The district court correctly cited the cases of Martinez v. Morgan Stanley and Keller v. Gasparri to support Plaintiff's proposition that there needs to be certain facts or statements attested to which would demonstrate that a declarant has foundation or personal knowledge of the statements in their declaration. So... Do you have any evidence that disproves Barnes & Noble's assertion that Mr. Adams supervised all of the stores in California? I don't currently. I mean, I could. I have not read the deposition transcript of Marvin Adams. I don't know what's contained within it. I believe my office just received it a few days ago. I have no ñ all I know is that I did an Internet search and noticed that it stated that Marvin Adams was the original director located in Sacramento, and therefore I drew the assumption that he only oversaw the Sacramento region. And the declaration of Marvin Adams merely states that Mr. Adams was responsible for the Barnes & Noble stores in California. It does not state that he oversees these stores. It does not state that he ever visits these stores, such that he would have knowledge of the hours worked by the store managers or what their salaries are that they've earned. It does not state that Mr. Adams has reviewed any business records or personnel records of the store managers to ascertain the amount of hours that they're working, the meal or rest periods that they might have missed, or even their salaries. And it's important to note that the declaration of Marvin Adams is also entirely silent on the issue of meal and rest periods and whether or not Mr. Adams believed that the store managers could take meal and rest periods or whether or not they, in fact, even missed any at all. And Appellant points out and cites a number of cases, Ninth Circuit cases like self-realization or Enrique Capro. However, those cases are completely distinguishable from the facts. They are not cases involving the context of a declarant attempting to establish federal jurisdiction. And so the cases that this court should find persuasive are other district court cases in which the declarants or the judges have found that there is no foundation or personal knowledge in declarations in which the declarants don't state what their job responsibilities are, don't state what their job duties are, and don't state that they've made a review of business records. And so Barnes & Noble also is a sophisticated business that is required under California law to maintain employment records, personnel records of its employees, and therefore has the sole and full access to this information. And therefore, you know, it should have provided this information to be admissible evidence at the time of removal. So and even moving on from this topic, should this court for some reason find that the declaration of Marvin Adams did have foundation and personal knowledge, Barnes & Noble still cannot prove with the preponderance of the evidence that the amount in controversy in this case exceeds $5 million. In terms of the declaration has assumed that store managers typically work 50 hours per week, five days per week, work five days per week for 50 weeks per year. There's no basis for Barnes & Noble to assume that store managers actually work 50 hours a week. While the declaration states they are scheduled to work 50 hours per week, the declaration contradicts itself in the next paragraph, saying the actual work weeks of store managers vary from employee to employee. Barnes & Noble makes no record of the time worked by store managers. Therefore, the declaration contradicts itself on that issue. Moreover, Barnes & Noble bases its overtime calculations based upon the number of stores that are in existence in California in any given year. It does not take into account. It assumes that given that calculation, no stores were closed during a given year. It assumes that each store manager worked 50 weeks per year, and it does not take into account stores that might not have had a store manager who went on an extended leave of absence, a store manager who went on medical leave, a store manager who took more than two weeks of vacation per year. And furthermore, it is not apparent from plaintiff's complaint, it's not facially apparent that store managers typically and regularly worked overtime on a regular basis. For example, plaintiff's complaint states that plaintiff and the other class members worked over eight hours in a day and or 40 hours in a week during their employment with defendants. The complaint does not state that store managers regularly and typically worked overtime hours. Barnes & Noble itself stated that it is difficult to evaluate with precision the amount in controversy because plaintiff does not make specific allegations about how many hours of overtime defendants allegedly failed to pay. And that's in the evidence of record, page 54. There are several district court opinions which hold that defendants cannot assume maximum violations, which is what Barnes & Noble did with its meal and rest period calculations. Under California law, two meal and rest period violations are the maximum recoverable that a plaintiff or putative class member can recover per day. And Barnes & Noble assumed that 15 meal and rest periods were missed per week, which is the maximum violation. And several district courts, such as the case in Riddock v. McCormick & Schmitz or Ray v. Nordstrom, have held that a defendant should not be permitted to assume maximum violations because it goes against this Ninth Circuit's strict presumption against removal. And it essentially shifts the burden of proof to plaintiff to prove that the amount in controversy is less than 5 million in this case, which from appellant's argument, it becomes apparent that appellant believes that plaintiff should bear the burden of proof in proving that the amount of controversy is less than 5 million. That is not the case in the Ninth Circuit or, I don't know, for that matter, other circuits as well. And additionally, plaintiff's complaint does not permit defendant to assume that the maximum violation of meal and rest periods because the complaint states, defendant failed to provide plaintiff and the other class members the required meal and rest periods during the relevant time period. The complaint does not state that meal and rest periods were typically and regularly missed. So defendant cannot draw that assumption. And moreover, again, the Adams Declaration is entirely silent on the issue of meal and rest periods missed. Moreover, Barnes & Noble vaguely touches upon the fact that penalties and fees may be included in the amount of controversy calculation. They don't, one thing that was not mentioned in Eric Lina's briefing is that Eric Lina alleges two causes of action. One is for unpaid minimum and overtime wages. And the second is for violation of Business and Professions Code 17-200. According to the Supreme Court case of Panetta v. Bank of America, waiting time penalties or statutory penalties are not recoverable under Business and Professions Code 17-200. And therefore, these penalties, statutory penalties, cannot be included in the amount of controversy calculations. And Eric Lina does believe that defendants should not be permitted to amend his declaration because, you know, first of all, it's our position that even if the declaration was found to have foundation and personal knowledge of the statements testified regarding which it does not have foundation or personal knowledge, that defendants' assumptions and speculations cause its amount of controversy calculations not to reach a preponderance, not, sorry, let's start over again. Yeah, should the declaration be found to have foundation and personal knowledge, which it does not, defendants' calculations for the amount of controversy are so speculative that the amount of controversy could not be found to be more than $5 million in this case. You don't have to go through all of your briefs. Okay. Very well. So I guess addressing just the last point for why Lina feels that we should, that Barnes & Noble should not be permitted to amend its declaration is that cases like Abrego, Abrego, and other cases require that evidence in support of the summary judgment type evidence must be presented at the time of removal. And the removal statute allows for two periods in which the case can be removed, and the first is 30 days after the filing of plaintiff's complaint, in which this case the defendant should have proffered any admissible evidence that it had at that time, which defendant is in possession of all of that evidence and could have easily done so. And we see this as, we see the request for amendment as an admission that Barnes & Noble is aware that it relied upon unsubstantiated assumptions and speculation and failed to proffer competent evidence to meet the amount of controversy. And as for defendant's fairness argument, we believe that it is not fair to permit them to amend the declaration because they have had their day in court. They could have done it 30 days after the complaint was filed. Their notice of removal, if you've read it, it's completely bare. There's no evidence. Got it. Okay. And therefore, on the opposition to plaintiff's motion to remand, they were on notice that plaintiff was seeking certain specific evidence and they should have provided the information at that time. Okay. Thank you. Thank you. Take a deep breath. Thank you. Let me very briefly address a couple of what I believe were factual misstatements. First, in paragraphs 39 through 47 of the complaint, the plaintiff's very clearly alleged that every one of these violations happened at all material times. So, for instance, contrary to counsel's argument, they didn't say they might have missed a meal break, they might have missed a rest break. This paragraph 40, at all material times set forth herein, defendants failed to provide all requisite, that key word all, all requisite uninterrupted meal and rest periods to plaintiff and the other class members. So we're entitled from plaintiff's own pleading to calculate the missed meal and rest break periods based on their allegation that it happened every single time. Second, counsel said that we assumed employees were working 50 hours a week. That's not accurate. The Adams Declaration said 45 hours a week. It said that everybody's scheduled for nine hours a day. That's the standard, so I just wanted to clarify that. Fifty weeks a year, right? Excuse me? Fifty weeks a year. Fifty weeks a year. Yeah, they get two weeks of vacation. You know, it's a pretty standard schedule. Counsel, could I just ask you quickly, a few minutes ago in your opening argument, you said that the, not going to all stores in Barnes & Noble, I promise, I'm not going to ask you about that, but I think you said a couple of times that this declaration, Mr. Adams was the sole regional manager. And, of course, the affidavit says I am a regional manager. He is a regional manager within the company. He is the sole regional manager for California. Okay. So this affidavit, Paragraph 2, says I am a regional manager. It doesn't say the or sole. And my question is just whether or not the Detroit court had anything available to it in the record that would have told him the fact you've just told me. Nothing more than the rest of that sentence, which says I have responsibility for California stores. Thank you. Okay. Finally, with respect to the remedy, we think the record is clear enough for the appellate court to simply reverse, but alternatively we think a remand with ability to supplement the declaration would be appropriate. Okay. Thank you. All right, counsel, thank you for the arguments. The case is submitted. Thank you. And then returning now to Sayegh versus Enright.
judges: Nelson, Fisher, Christen